模仿實機 Thank you, your honor, and may it please the court, George Hicks for the appellants. In a sua sponte order, the district court categorically prohibited settlement program accountants from ever reallocating revenue in order to achieve matching under policy 495's annual variable margin methodology. That order should be reversed for three separate reasons, none of which class counsel seriously disputes. First, in its previous policy 495 decision, this court affirmed the AVMM in its entirety. It is undisputed, however, that policy 495 and the AVMM actually permit program accountants to engage in limited revenue reallocation on a claimant by claimant basis in order to apply the AVMM. Indeed, it is undisputed that this practice is a necessary component of the AVMM and that without it, the AVMM actually worsens the mismatching problem it was designed to remedy. And it's undisputed that in the previous appeal, class counsel challenged revenue reallocation under the AVMM, and yet this court upheld the AVMM in its entirety. Accordingly, the district court's order on remand, sua sponte prohibiting that conceitedly necessary component of policy 495 and the AVMM violates this court's decision affirming the AVMM in toto. Second, the district court's order violates this court's 2013 matching decision, which recognized that, number one, claimants should receive settlement compensation based on actual economic losses, not windfalls based on idiosyncratically maintained records, and number two, that like claimants must be treated alike. The AVMM is the methodology used to satisfy those requirements, but it is undisputed that the AVMM cannot function properly unless revenue is recorded in the month in which the relevant economic activity took place. Otherwise, the AVMM actually makes things worse. The district court's order prohibiting even limited claimant by claimant revenue reallocation in order to properly apply the AVMM thus exacerbates the very problems associated with mismatched profit and loss statements that this court identified in the matching decision. Third, at a minimum, the limited revenue reallocation that is necessary for the AVMM and matching to work should be permitted under the rubric of error correction, which policy 495 also recognizes, and that even the district court's order permits. Class counsel does not seriously dispute any of this. Indeed, the list of what they don't dispute is remarkable and essentially dispositive. They don't dispute that the AVMM doesn't work and actually causes more problems if you don't get the revenues right in the first place. They don't dispute that policy 495 permits limited revenue reallocation in order to apply the AVMM. They don't dispute that the claims administrator and the district court previously allowed limited revenue reallocation under the AVMM. And they don't dispute that during the last appeal they raised to this court that the AVMM permits limited revenue reallocation and they challenged this aspect of the AVMM, and yet this court still upheld the AVMM in its entirety. Rather than dispute any of this, class counsel largely relies on rehashed arguments that either have already been rejected or are wholly inapposite here. At the end of the day, settlement program accountants have to be able to exercise their professional judgment on a limited claimant-by-claimant basis to reallocate revenue when necessary so that the AVMM works as intended, matching properly takes place, settlement claims reflect economic reality rather than unjustified windfalls, and like claimants are treated alike. The district court's sua sponte order to the contrary upends all this and should be reversed. It came with no explanation, right? I'm sorry, Your Honor. Judge Barbier's ruling came with no explanation. It did not. It was done with no explanation, no analysis, no briefing. We did submit a motion for reconsideration, and I raise that only because attached to that motion for reconsideration, there is a fairly lengthy and detailed declaration by an experienced accountant who has experience with the claims administrator, and he walks through very straightforwardly for those of us who are not accountants, which I imagine is most of the people in this room, why the AVMM has to have this limited ability to reallocate revenue, why it makes things worse. If you don't do that, certain situations where if you don't do it, you're going to end up with these windfall claims and compensation, and also how it actually, what we're asking for is an even-handed rule. Mr. Gaspardo, the declarant, actually points out paragraph 18. He gives an example where failure to do this actually hurt the claimant. So this is by no means a BP-friendly rule. This is an even-handed rule because, of course, it comports with economic reality, which is the watchword of this Court's decisions, particularly the matching decision. The idea here is to provide settlement compensation consistent with economic reality rather than sort of idiosyncratically maintain records. So I would, if you haven't seen or read Mr. Gaspardo's declaration, I strongly encourage that you do so because it lays all this out in a very straightforward manner, and it is also unrebutted, undisputed, and unmentioned in class counsel's brief. But some of Mr. Gaspardo's examples run into the same sort of issues that Judge Davis explains in the Policy 495 decision, right? Like, would you agree that do you recall in the Policy 495 decision there's the farmer with the $200,000 that he receives once on October 31st and then the next year on November 1st? Awarding a $200,000 loss in that circumstance, I would take it under your theory, is a windfall, right? Well, it's a windfall, but I think what the Court was discussing in that particular section, of course, was the industry-specific methodologies. And the problem with the industry-specific methodologies, which are dramatically different in kind from the limited case-by-case situation we're looking at here, is that, of course, that was a categorical, industry-wide formula that applied to every claimant who fell within the umbrella regardless of the specific facts of that claimant. So what you would end up having are claimants where you might have a P&L statement that didn't comport with economic reality or a claimant's chosen period that didn't comport with economic reality, which, you know, is a very different situation than the kind of necessary limited revenue reallocation we're talking about here, where you would be looking at a specific claimant's individualized facts and, you know, in order to apply the AVMM, which is necessary to make the matching work. So Judge Davis explains, and the reason that the ISMs fail in the policy 495 decision is that the settlement that the parties agreed to allowed the claimants to pick their months, right? There are three consecutive months within that, whatever, seven-month period of 2010. And so if you happen to choose a month, obviously they would do this for rational reasons, where you haven't received your $200,000 that you're going to require the claims administrator, the district court, and by extension us, to honor that choice on behalf of the claimant. And so some of the examples that the accountant's report that you referenced seem to run kind of headlong into this distinction where you're moving money, obvious for the economic realism reasons, but you seem to be moving it in ways that are even more extreme than moving the $200,000 in Judge Davis's example from November 1 to October 31. Well, a couple of responses, Your Honor. I think that, for example, in the ISM sort of agricultural example, I mean, I think it was a simplified version that appeared in that decision because what the ISM actually did was it would take that revenue and just spread it over the entire year. So it wasn't even a matter of whether or not there was actual relevant economic activity that was occurring in a particular month. And so I think it was sort of a much broader example than what we are talking about here where you've got a landlord who clearly has three, renting out three months of rent and happens to receive a check for triple rent. But the other thing I would also point out is that nobody, under the rule that we're arguing, nobody is deprived of their choice of months. This is done before there's any choice by the claimant who, of course, gets to choose its months. Under the settlement, they get to choose different periods, not for purposes of you have to choose the same months in each, but you get to choose one of three different benchmark periods. So all of that happens after this occurs. So the claimant may actually answer my next question, which is would the farmer in Judge Davis' hypothetical from the Policy 495 decision receive $200,000 or $0 if instead of being processed under the relevant ISM, it had been processed under the AVMM? Well, I think it would actually depend, and I don't mean to avoid the question, it would depend on the facts precisely because what we're talking about here is a necessarily fact-dependent and claimant-specific rule, if you will. But what I can say is that certainly whatever would happen, number one, the farmer still gets to choose his or her own compensation period to whatever maximum recovery the farmer gets under whatever choice he or she wants. But then also, whatever that choice is, is going to be far more consistent with economic reality and awarding compensation based on actual real economic loss, as the matching decision essentially strongly encouraged. And then on remand, the district court, of course, looked at all the evidence, including the parole evidence, and essentially codified, if you will, what the court was talking about in the matching decision, saying that, yes, the parties did agree in the settlement agreement to have this sort of matching to make sure that like claimants are treated alike, that the settlement awards comport with economic reality. And so I think that in another respect also, when Judge Davis was talking about the ISMs, you see several references to the ISMs requiring reallocation. This is at page 303 and 304 of the opinion. Reallocation is, quote, inherent in the industry-specific methodologies. And I think that's important because if you go back and look at what class counsel was arguing in that appeal, they were arguing, they were challenging all revenue reallocation under both the AVMM and the ISM. And the AVMM is the sort of permissive element, and the ISMs were the mandatory required element. And the best evidence of this, I think, is if you go back and look at their opening brief in that case at page Roman Norma 11, and this is where they set out the issue presented for their appeal. And the issue is, quote, whether the district court erred in approving a final matching policy that allows, and in the case of the four specialized frameworks, requires revenues to be moved. So they are actually presenting as the issue in the last appeal both of these challenges to revenue reallocation. The allows is the AVMM portion. The requires is the ISM portion. And, of course, this court struck down the required portion, the ISMs, and it upheld the AVMM in its entirety. And there's really no dispute about that right now. And, of course, there's also no dispute that the CSSP was actually engaging in this and that the district court actually upheld this. And that's at 26855-57 of the record. These are three examples where the district court upheld this reasonable exercise of discretion by the accountants where, for example, one of them was the rental situation where the court said the accountants, quote, reasonably exercised their discretion in addressing an obvious mismatch of revenue expenses even in the absence of an actual accounting error. And even in this court, in this appeal, class counsel still doesn't dispute that Policy 495 and the AVMM permit revenue reallocation. So you can see this at page 9 of their brief where they actually say the accountants under the original matching policy, and I note that they use the word original because they are essentially conceding that it's been changed by the remand order. They say the accountants, quote, retained discretion to reallocate revenues even for claims subject to the general AVMM. And then again in footnote 30, the accountants made changes to revenues under the AVMM methodology. So there's really no dispute at all in this case that that is what has been happening, and it's been happening because it's consistent with Policy 495 and the AVMM. And they challenged it in the last decision. They expressly included it in their issue presented. They argued it, and this court accepted their argument on the ISMs, but it's not on the AVMM. And if there are no questions? Why did Judge Barbier qualify it to just apply to errors? Where was he coming from? Your Honor, because we didn't have the benefit of briefing. I mean, I think maybe he just could have overread or, you know, he was trying to implement, you know, this is a busy MDL. There's a lot going on, and, you know, he's doing his best. You know, he may have just entered this order without really kind of understanding the consequences or perhaps the long history behind some of this. You know, we tried to point it out in the motion for reconsideration. You know, again, he's busy. He denied it, and so we're here. There was no hearing, right? There was no hearing. It was just submitted. To my understanding, there was no hearing. That's correct, Your Honor. Thank you. Thank you. Good afternoon, Your Honors. Steve Herman for the plaintiffs. May it please the Court. What I think that opposing counsel may be missing is that the policy 495 was really separated into several different segments. Some of them completely aren't at issue here. One of the segments was the AVM methodology. Several of the segments were the four specialized frameworks, which were the ISMs. All of that was preceded by an introduction. The introduction set forth underlying issues and principles that gave guidance to the program accountants as to what to do with the P&Ls before you either applied the AVM methodology or one of the ISMs. And as we pointed out in the footnote that opposing counsel cited, that really comes from the underlying principles. So when this Court affirmed AVM, what it was really affirming was a process to reallocate expenses because AVM is really an expense reallocation process. So the Court really didn't say to Judge Barbier, this is what you do with the preliminary steps with these underlying principles like Principle 7. So Judge Barbier, I think, very reasonably said, okay, I'm supposed to apply AVM, which is an expense reallocation process that's been affirmed and I need to apply it, but what do I do with these preliminary steps? And he said with respect to errors, and there is no dispute about this, that the settlement program accountants still look at the P&Ls and when they find errors, they correct them, or at least in their professional judgment. Sometimes BP disagrees with that. Sometimes the claimants disagree with that, and that usually ends up here. With respect to revenue reallocation that was discretionary, Judge Barbier looked at the same language that Judge Oldham was looking at in the other part of the 490. I don't purport to speak for Judge Barbier, but this is what I suspect. He's looking at the other part of the decision where this Court says you shouldn't be moving around revenues, which was our argument from the very beginning. At most, you should only be reallocating expenses, and that's where I think the admonition comes from. As we discussed, right now and before and after this order, the settlement program accountants still have the authority to review for what they consider to be errors, and that is when they think that people have improperly recorded revenues, they still retain the discretion to reallocate those revenues, and they still do, and that happens all the time. It's not surprising to me that with 135,000 claims filed, BP has been able to find a few anomalies, but it's our impression of plaintiff's counsel that this change in Judge Barbier's order as a practical matter really hasn't changed anything because the settlement program accountants who are actually making these decisions on the front lines who used to reallocate revenues under AVM are still reallocating revenues in most cases, and they just consider it to be an error. So I'm looking at policy 495. Yes, sir. And it says obviously you're going to restate the P&Ls if there's a mismatch of revenue and variable expenses, so that's revenue and expenses. And then the next sentence is if matching issues remain after such restatements, revenue and or variable expenses will be reallocated as per, et cetera, et cetera, et cetera, including AVM. So what in that limits it to revenue or expenses? It seems to be talking about both of them being reallocated to effectuate or to alleviate the mismatch. I believe that's correct, and I believe what Your Honor is reading from is one of those preceding principles. Got it. So you're not saying that AVM is limited to restating either revenue or expenses. The methodology of the AVM includes restating both. The methodology of the AVM was, from our point of view, an expense reallocation. However, before you apply that expense reallocation, the court gave discretion in policy 495 to the program accountants, and this was true under whether it's ISMs, whether it was AVM, or whether it was what we call the old 4C methodology to correct the P&Ls, either because of an error or for matching purposes. And as a practical matter, that's what happened, and that's what continues to happen. Except for you agree that Judge Barbier restated the AVM, right? Like you agree that he has modified it by saying you cannot reallocate the revenue. Well, I don't know if he changed it. I don't want to split hairs too much. I'm not sure if he really changed the AVM methodology. What he did was he changed the conditions or the precursors of the discretion before you apply the AVM methodology. But if this Court says everybody is subject to AVM, and AVM includes the language I just read that says after such restatements, if there are still mismatches, we reallocate one, the other, or both to make sure that we've alleviated the mismatch, and then Judge Barbier comes behind and says, no, it turns out you can't reallocate the revenue. How is that remotely consistent with either the policy or the Court's mandate? Well, I think what the Court said before was you have discretion. You're not required to move anything in terms of revenue at least. You're required to move expenses. But on the revenue side, you have the discretion to reallocate for either an error or a quote-unquote mismatch. And now you only have the discretion to do it for a quote-unquote error. Got it. Because that is a change. It sounds like we're saying the same thing. I think it's a change. But I think that from a practical standpoint, the same P&Ls that are getting changed now are the same P&Ls that were getting changed before Judge Barbier made that. I understand the practical argument. Yes. But you're talking about the decretal language of a Federal court judgment. And the Federal court judgment varies both from the mandate of this Court in the Policy 495 decision and the text of Policy 495, or at least I don't know how you count that, the language I'm reading. You're calling it preambular language. Correct. Is there a meaningful legal distinction between whether it's in the policy or the preambular language to it? It's still part of the— Well, I'm not sure. And Judge Barbier, I assume, faced the same potential element of confusion. I think it's certainly reasonable for him to read the 495 decision as—and frankly, there have been some other decisions like the nonprofit's decision and some other decisions where this Court had indicated that it wasn't appropriate, that BP did not agree that revenues would be reallocated because the entire settlement was based on using contemporaneous P&Ls. And, as Your Honor pointed out, being able to choose the months, which this arguably obviates from a practical matter. And so when you have an agreement where they've agreed we're going to use the contemporaneous P&Ls for at least revenue purposes, and that was changed through a number of decisions, we're going to move the expenses, that's kind of where we are, unless it's so egregious or so outrageous or just it's a commutation error that it's considered an error. In that case, then we would allow for, and the Court still allows for, and it still happens that they are reallocated on the revenue side in the accountant's discretion, which is the same thing that happened before. And at this point, unfortunately, seven years on, with only a handful of cases left, as I understand it, whoever's aggrieved by what the accountants either allocate or fail to allocate is usually bringing it all the way to here with an appeal. And so on policy grounds, I would ask the question of why the Court would do this on an across-the-board standpoint now. There's only a handful of cases left. All of the cases, it seems to me, are coming up here on a case-by-case basis. It would seem to make more sense from a policy standpoint to just take them as they come and say, did the program accountants do what was called for in this particular circumstance? Are you saying that the program accountants can reallocate the revenues notwithstanding Judge Barbier's order that the claims administrator shall not reallocate revenues except for errors? Put a pin in errors. Judge Barbier specifically says you shall not reallocate revenues, full stop. And is your position that they can still, and as a practical matter, do still reallocate revenues? I haven't really studied all of the decisions and what the program accountants do, but my guess is that the program accountants, when they see things that are out of whack, for lack of a better word, they will, before applying AVM, reallocate revenues as a quote-unquote error. And in fact, there have been cases, or at least one that I know of, where the settlement program accountants reallocated the revenue because the claimant changed his or its process of how they were booking revenue during the period that was in effect. That resulted in a denial of the claim. It went to the program appeal panelist. They read the language that you read and said, wait a second, you're not supposed to move revenue around, so we're going to reinstate this claim. Then it went to Judge Barbier. He granted discretionary review, and he said, no, this is an error, and the program accountants  I think that claim is now going to be before the Fifth Circuit, if it's not already, because the claimant's grieved by it. But what is the line between, so you think that when the revenue and the expenses get mismatched, they can be reallocated as an error, which of course is their second question presented. I take it you're not agreeing with them. You're just saying that there's some line between an ordinary mismatch and an out-of-whack mismatch? Is that what you're saying is the distinction between when things can be reallocated? I think that whether it's a benefit or a weakness of the settlement, especially over how the settlement has been changed because of the BP's arguments over the past seven years, that at the end of the day, what you're left to is not this Court or even Judge Barbier making these decisions in 99 out of 100 cases. It's an employee of PricewaterhouseCooper who is using his or her independent professional accounting judgment to decide whether a P&L is in error. And what all of the matching stuff that has been done from this Court's very first opinion in Deepwater Horizon 1, and we respectfully disagree with that, but what we have agreed with and what has been done is that matching, and this is not to repeat the record, but it's prevalent in the record, that matching is an expense issue. It's not a revenue issue. And so there really is no accounting basis for messing with the revenues when you're talking about matching. And in fact, it's not consistent with the way the settlement was negotiated and what was agreed to and all of that. But nevertheless, you've got a situation where you still have a program accountant, and he or she says, well, looks at some of the things that Mr. Gispero is pointing out and some of the anomalies that got through the cracks, and some of those accountants are saying, I'm going to restate these P&Ls because I think that's an error, even on the revenue side, before we apply this matching on the expense side. And some other accountants would look at that, and they would say, we're not supposed to be moving revenues, and so we're going to keep them where they are. Or I don't think it's an error. I just think it's, that's what happens in cash-based accounting. So looking at the realities that you're so familiar with, would you agree that Judge Barbier's sui sponte language should be reversed, that it's not just in errors because these accountants are looking at the big picture? Maybe it's not an accounting error, but it's not an accurate representation of revenue and expense. Well, I would respectfully disagree with that because I think that the weight of not only the evidence, but the Fifth Circuit decisions. After explaining how the settlement really works, and then the people agree to the settlement and go away eventually, then how can you say that his tagging on only in error is correct if that's what's not happening? Well, I think that is what's happening. It's just that people have a different sense of what an error is, and different accountants would apply that term in different ways. And that's part of the reason why so much due process is built into the system, because if you're agreed by that, whether you're BP or the claimant, then you have an intermediate appeals process, then you go to discretionary review with Judge Barbier, and then ultimately, for better or worse, you can come to the Fifth Circuit with it. And so, I mean, I firmly believe, based on all the evidence, based on being involved in negotiations, based on all of the decisions that I've lived through for the past seven years, that it was never intended, nor should it have been intended, that revenues would ever be moved, even if you account for a matching problem. How would you account for a matching problem if you can't move the revenues? You move the expenses. Because what matching is, matching is that the expenses don't match the revenues. Right. And so what our expert economists and CPAs have said throughout our record excerpts, and to some extent what the Fifth Circuit has said in various different cases, is that the settlement was intended, whether it was right or wrong, smart or stupid, good or bad, the settlement intended to use contemporaneous P&Ls, even cash basis P&Ls, which BP knew would be used. They have these spikes in revenue, and that's just a function of the way people keep their accounting records. And BP took that into risk, account, et cetera, when it agreed to the settlement. These spikes sometimes hurt the plaintiffs based on the timing. It's not solely in BP's favor. And so, but because of Your Honor's decision in Deepwater Horizon 1, which was, but there is something that BP didn't agree to, and that is that you would have these issues where those spikes in revenue don't have corresponding expenses attributed to them, and so it makes an artificial, makes the difference, the V between revenue and expenses greater than it should be. And so what we're going to do to correct that problem is not move revenue around, but take the expenses, figure them out for an entire year, take the average of that, and create an annual or average variable margin so that the expenses are matched to the revenue. Is it revenue only when it's received by the claimant? Well, it depends on what their accounting system is. Under cash basis accounting, yes, you record the revenue when you receive it. And most businesses, and particularly small businesses, keep their businesses on account. So for matching purposes, when is it revenue? Well, when it's received. It's going to depend on which accounting system they use. Is that what you're telling me? Well, the revenue is always when it's booked. When it's booked, which is different from when it's received? Well, if you're on cash basis, it's booked when it's received. All right. And everybody knew that we were going to be using cash basis P&Ls, and that was part of what everybody agreed to. And maybe BP regrets that now, but it made sense at the time because theoretically BP was going to save a bunch of money because instead of paying accountants to go through all these P&Ls and fix them and change them around, they were going to accept the claimants, P&Ls that were made in the ordinary course of business, and it was going to be easier to administrate and faster to administer. I mean, I assume that that was part of their calculus. I know what they agreed to. I don't know exactly why they agreed to, but I know what they agreed to. And, you know, unfortunately, seven years later, now we have a much different settlement than what we agreed to, but everybody's doing their best, waiting through these issues and these appeals and these things that are working. In this case, on this claim, do you know whether or not it's going to make a significant difference in the amount of the claimant's award, whether the appellant prevails or you prevail, here on appeal? Is it going to make a significant difference? On an across-the-board basis? Because my understanding is the original, the claims have been settled. So this is kind of, I'm here as class counsel. I'm not here for any claimant. So what I guess they're asking your honors to do is have another across-the-board policy change. Then the program would have to shut down again, and they would have to go and revisit and see which ones had to be reprocessed and which ones didn't. To me, that doesn't make a lot of sense, given the fact there were 135,000 claims, and I think they're already working their way up through the system. So if the court, this court, has a problem with what was done in any particular case because revenue should have been moved, either as an error or for a matching issue, then there's an ability for this court or the district court or the settlement program appeal panelist. So is the answer to my question, you don't know? I have no idea what difference it would make in terms of the overall dollars. I apologize. All right. Without any other questions, I'll just rest on the briefs. Thank you, your honors. Rebuttal. Thank you, your honor. Do you know the answer to my question? I do know the answer to your question, and that it is from a number of claimants standpoint, it's not large because we are only talking about maybe in the ballpark of 100 claimants that are sort of still in the system. But from a monetary perspective, it's significant. And we, on our penultimate page of our reply brief, we have a footnote that points out just a few of the cases that are on appeal to this court. I don't know whether they're being held for this decision or if they're just pending, but we put the monetary amount. When you say it's significant, that means it's significant to the good of BP. In other words, if you prevail on this one, you're going to end up paying out a lot less money if the formula you're advocating for applies. Is that what you're saying? No, actually, your honor. I don't know if that will actually happen. Because I thought I heard you say earlier it could adhere to the benefit of a claimant. Sure. No, it's an even-handed rule that we are advocating for. And I don't know if we prevail in this and they go back down. All we're asking for is that the settlement accountants have the discretion to be able to. You're telling me you're arguing for a position that could result in the claimants receiving a lot more money. I don't know if they'll receive more, but I can't say that BP is going to absolutely prevail in these claims. All we're asking for is that the settlement program accountants have the ability and the discretion on a claimant-by-claimant basis to reallocate the revenue consistent with economic reality. And the main point I want to make on rebuttal is I think I heard that it's been conceded that there has been a change in Judge Barbier's order on remand, that there is now a different policy 495-AVMM in effect. And I kind of think that that's the beginning and the end here. And I'll just give four quick responses to something I heard about that. Number one, of course, as Judge Oldham pointed out, it is nonresponsive that the practical effect might be no different because maybe the accountants are engaging in error correction. I mean, it's decadal language by this Court. It's the violation of a mandate. And it doesn't matter if Judge Barbier inadvertently did it or no one is saying that he was trying to circumvent anything, but that's how the mandate rule works. Number two, this idea that the practical effect would be no different, with all respect, that's completely unsupported. There's nothing in their brief saying that. There's no declarations or anything saying that. So I don't think that we can just go on that. Number three, at least according to Mr. Gaspardo's declaration, it is not correct. He points out a number of examples where after the district court's decision that we're looking at right now, that the program accountants have not engaged in the same thing that they were doing before, which is the discretionary movement of revenue based on matching, not based on error correction. And there are, in fact, cases before this Court, the ones that I mentioned before, that are being held for that very purpose. So, you know, it's unsupported, but I think it's also not borne out by the actual record. And then number four. How many cases would that be that were in between when Barbier issued his change and now? I don't have an exact number, Your Honor, but I do know that I think that there are at least three cases that are currently before this Court where this issue is at least implicated. Well, we're getting close. We're getting close. And the last point I just want to make about this practical effect argument is that, as Judge Olin pointed out, it is completely inadministrable to have this line between, well, they can make the change for error correction but not for matching, because, you know, you're just going to have just as many arguments over, well, did it fall into the matching bucket or did it fall into the error correction bucket, and, you know, is there a different standard of review and what's Judge Barbier supposed to do with those? The very clean way to address all this and to dispose of all this is through the mandate rule, which is that this Court upheld the AVMM in its entirety. It is undisputed that as part of the AVMM, the accountants can engage in limited revenue reallocation to get the revenues right in the first place and to make sure that the AVMM works to ensure matching and to reverse the district court on that basis. If there are no further questions, thank you. Thank you, counsel. The Court will take this matter under advisement.